UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT GAYTAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 11 CV 8624** |
| v. | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Robert Gaytan filed a *pro se* complaint against the City of Chicago, alleging race and religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Before the court is the City's motion to dismiss Gaytan's complaint pursuant to the Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the motion [#14] will be granted in part and denied in part.

## FACTS[2]

### I. Gaytan's Employment with the City of Chicago

Robert Gaytan was hired by the City of Chicago's Department of Water Management ("DWM") in March 1994. As of 2010, he was employed as a bricklayer. (Compl. ¶¶ 1, 3.)

---

[1] This court has jurisdiction under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices occurred in this district.

[2] Except where otherwise noted, the following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion.

During his tenure at the DWM, Gaytan was discriminated against on the basis of his race by Bill Wilson, John Stroden, and Billy O'Conner. (*Id.* ¶ 4.) Gaytan was also subjected to a hostile work environment on the basis of his race and religion. (*Id.* ¶ 5.)

On March 17, 2010, Gaytan was disciplined, allegedly for having fallen asleep in his car after his shift had ended. (*Id.* ¶ 7.) On March 24, 2010, Stroden "harassed" and "insulted" Gaytan. (*Id.* ¶ 8.) Finally, on August 1, 2011, Gaytan was suspended for ten days, allegedly for performing substandard work. (*Id.* ¶ 6.) As a result of these unlawful suspensions, Gaytan lost time at work.

## II.     Employment Discrimination Charges Filed with the EEOC

### A.     Charge Attached to the Complaint

On April 26, 2010, Gaytan filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his Christian religion and "Mexican ancestry." (Compl. Ex. 2.) The charge asserts that on April 20, 2010, Wilson, another brick layer, called Gaytan a "jack-off" and said that he did not want to work with Gaytan. Wilson also refused to communicate with Gaytan, was verbally abusive, and displayed hatred for Mexicans and Christians. Gaytan complained about Wilson to Barrett Murphy, an assistant deputy commissioner, and Murphy told Gaytan to resign. The EEOC charge alleges that Wilson's harassment created a hostile work environment that interfered with Gaytan's ability to perform his job duties. Finally, the charge asserts that Gaytan was improperly suspended on April 21,

2010 because he allegedly threw coffee at O'Conner.[3] The EEOC issued a notice of right to sue on September 9, 2011. (Compl. Ex. 1.)

### B.     Additional Charges

Between April 15, 2010 and August 10, 2011, Gaytan filed at least three additional charges of discrimination that are not attached to his complaint. The City has included the three additional charges as exhibits to its motion to dismiss.

The first charge, dated April 15, 2010, alleges discrimination on the basis of "Mexican ancestry." (Def.'s Mot. to Dismiss Ex. A.) The charge asserts that Gaytan was suspended for one week on March 5, 2010, by Paul Hansen, the DWM's north district superintendent, because he allegedly falsified documents and performed poorly at work. In addition, the charge asserts that Gaytan was harassed on the basis of his Mexican ancestry by O'Conner[4] between March 17, 2010 and April 1, 2010. The charge asserts that O'Conner harassed Gaytan by verbally attacking him in front of other employees, threatening discipline for poor performance, requiring him to perform tasks outside the scope of his assigned duties, and making frequent calls to Gaytan's cell phone throughout the day. The EEOC issued a right to sue letter on September 6, 2011. (*See* Def.'s Mot. to Dismiss Ex. D.)

---

[3] Gaytan's EEOC charge refers to "Billy O'Connell." The court assumes that this is the same individual referred to as "Billy O'Conner" in the complaint. For the sake of simplicity, the court refers only to "O'Conner" throughout this opinion.

[4] This charge also refers to "Billy O'Connell" rather than "Billy O'Conner."

The second charge, dated August 27, 2010,[5] alleges retaliation and discrimination on the basis of religion and "Hispanic ancestry." (Def.'s Mot. to Dismiss Ex. B.) The charge asserts that Gaytan was harassed by Stroden[6] on March 24, 2010 and that Stroden told him that he was "going to fucking fire me and write my ass up as many times as he can to get me fired." (*Id.*) The charge asserts that Stroden's conduct constituted discrimination on the basis of Gaytan's religion and ancestry as well as retaliation for Gaytan's April 15, 2010 and April 26, 2010 EEOC charges. The charge further asserts that Stroden suspended Gaytan on August 22, 2010, allegedly for conduct unbecoming of a city employee, because of his ancestry, religion, and in retaliation for filing EEOC charges. The EEOC issued a notice of right to sue on September 6, 2011. (Def.'s Mot. to Dismiss Ex. E.)[7]

The third charge, dated August 10, 2011, alleges retaliation and discrimination on the basis of "Hispanic ancestry." (Def.'s Mot. to Dismiss Ex. C.) The third charge asserts that Gaytan was suspended on August 1, 2011 by Hansen, allegedly because he fell asleep during his shift on March 17, 2010. The charge asserts that similarly situated employees who were not

---

[5] The date that appears above the notary's signature is August 27, 2010. Gaytan, however, wrote September 27, 2010, next to his signature. It appears that the September date is a typographical error. For ease of reference, the court refers to this charge as the August 27, 2010 charge.

[6] The court assumes that the individual referred to as "Jim" Stroden in the charge is the same individual referred to as "John" Stroden in the complaint.

[7] The right-to-sue letter attached as the City's exhibit E contains the same EEOC file reference number as the right-to-sue letter attached to Gaytan's complaint as exhibit 1. It appears that both parties attached different copies of the same right-to-sue letter, even though different underlying charges are at issue. Gaytan does not, however, contest the City's assertion that the EEOC issued a notice of right to sue for the August 26, 2010 charge on September 6, 2011. The court accepts this fact as true solely for the purpose of resolving the pending motion.

Hispanic were treated more favorably and that the suspension constituted retaliation for having filed three previous charges with the EEOC.[8]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

---

[8] Based on the charge numbers Gaytan referenced in his August 2011 EEOC charge, it appears that he was alleging retaliation for having filed the April 15, April 26, and August 27, 2010 charges. Gaytan did not list the correct dates for the three charges, however.

## ANALYSIS

The City argues that Gaytan's complaint must be dismissed in its entirety because the allegations in the complaint are beyond the scope of the charges he filed with the EEOC. The City also argues that, to the extent that some of Gaytan's claims may not be beyond the scope of the EEOC charges, they must be dismissed as untimely and because Gaytan did not receive a right-to-sue letter from the EEOC.

Gaytan filed no response to the City's motion to dismiss. "If [a court is] given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning." *Kirksey* v. *R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Gaytan's failure to respond may therefore constitute waiver or forfeiture of his right to contest dismissal. *See Alioto* v. *Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011); *Lekas* v. *Briley*, 405 F.3d 602, 614 (7th Cir. 2005). If the reasons given for dismissing the complaint are not sound, however, the court need not grant the motion as a matter of course. *See, e.g.*, *Dodd* v. *Pentair Pump Grp.*, No. 11 C 4478, 2012 WL 1985701, at *1 (N.D. Ill. Jun. 1, 2012).

**I.      Whether Gaytan's Claims are beyond the Scope of His EEOC Charges**

Before bringing a Title VII claim in court, a plaintiff must file a charge of discrimination with the EEOC and receive a right to sue notice from the EEOC. *See, e.g.*, *Conner* v. *Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005); *Cheek* v. *W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 46, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). The claims alleged in the plaintiff's complaint must be "like or reasonably related to the EEOC charge" and "reasonably . . . expected to grow out of an EEOC investigation

of the charge." *Peters* v. *Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (quoting *Harper* v. *Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995)). Claims are deemed reasonably related if there is a factual relationship between them. *Cheek*, 31 F.3d at 501. "This means that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* The purpose of this rule is to "afford[ ] the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion and [give] the employer some warning of the conduct about which the employee is aggrieved." *Id.* (internal citation omitted).

The City first argues that Gaytan's claims must be dismissed because they are beyond the scope of the EEOC charge attached to his complaint. In general, the court is restricted to considering facts alleged in the complaint and exhibits thereto in ruling on a Rule 12(b)(6) motion to dismiss. Because the court must consider the allegations in Gaytan's other EEOC charges to determine the proper scope of his complaint, however, the additional EEOC charges attached to the City's motion to dismiss may be considered part of the pleadings. *See, e.g.*, *Davis* v. *Cent. Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006); *Jones* v. *City of Chicago*, No. 94 C 3544, 1995 WL 669094, at *2 n.1 (N.D. Ill. Nov. 7, 1995) (Williams, J.); *Whitehead* v. *AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994); *see also* Fed. R. Civ. P. 10(c). Courts in this circuit have also considered EEOC charges to be matters within the public record that are subject to judicial notice. *See, e.g.*, *Moses* v. *U.S. Steel Corp.*, No. 11 C 385, 2012 WL 1066769, at *1 (N.D. Ind. Mar. 28, 2012); *Ocholi* v. *Skywest Airlines*, No. 11 C 310, 2012 WL 256125, at *1 (E.D. Wis. Jan. 27, 2012); *see also Davis*, 2006

WL 2255895, at *4.[9] Therefore the court may properly consider the EEOC charge attached to Gaytan's complaint as well as the charges attached to the City's motion to dismiss. *Cf.* Fed. R. Civ. P. 12(d) (requiring court to convert a motion to dismiss to a motion for summary judgment if the motion presents matters outside the pleadings that are not excluded by the court).

Gaytan's claim that he was "subjected to racial discrimination" by Wilson, Stroden, and O'Conner could encompass a wide range of unlawful employment practices. (*See* Compl. ¶ 4.) Because he may only proceed with claims that are like or reasonably related to his EEOC charges, the court must look to the factual allegations in the EEOC charges to determine which allegedly unlawful employment practices may provide the basis for his federal suit. First, Gaytan's April 15, 2010 EEOC charge alleges that O'Conner harassed Gaytan between March 17, 2010 and April 1, 2010 by verbally attacking him, threatening discipline, and requiring him to perform tasks that were not among his assigned duties. Second, Gaytan's April 26, 2010 EEOC charge alleges that Wilson harassed him on April 20, 2010 by calling him a "jack-off," telling Gaytan to "get out," and saying that he did not want to work with Gaytan. The charge also asserts that Wilson's harassment created a hostile work environment. Gaytan, however, did not otherwise indicate that the discrimination was ongoing and the top of the charge indicates that the latest date of discrimination was April 21, 2010. (*See* Compl. Ex. 2.) Therefore the focus of this charge is the April 20, 2010 incident with Wilson. Third, the August 27, 2010 charge alleges that on March 24, 2010, Stroden discriminated against Gaytan on the basis of his

---

[9] Indeed, the City argues elsewhere in its brief that the additional charges should be considered part of the pleadings. (*See* Def.'s Mot. to Dismiss at 3 n.4.)

Hispanic ancestry by telling him that he was going to "fucking fire" him and "write [his] ass up" as many times as it would take to "get [him] fired."

The factual allegations in the April 15, April 26, and August 27 charges allege specific instances of discriminatory conduct by Wilson, Stroden, and O'Conner. They would have put the EEOC and the City on notice as to the nature of Gaytan's grievance. Accordingly, Gaytan will be permitted to proceed with discrimination claims relating to O'Conner's alleged harassment between March 17 and April 1, 2010, Wilson's alleged harassment on April 20, 2010, and the May 24, 2010 incident involving Stroden.

Gaytan's claim that he "was subjected to a hostile work environment, including ongoing harassment due to his race and religion" is too vague for meaningful analysis. (*See* Compl. ¶ 5.) Gaytan does not specify who subjected him to a hostile work environment or what conduct forms the basis of this claim. To the extent that Gaytan seeks to bring a hostile work environment claim based on religious discrimination or based on race discrimination not encompassed by the specific conduct discussed *supra*, the claim will be dismissed.

Finally, Gaytan claims that his suspension and discipline on March 17, 2010 and August 1, 2011 constituted an unlawful employment practice. It appears that Gaytan is claiming that he was disciplined and suspended on account of his race. (*See* Compl. at 2 ("Plaintiff lost time due to false suspensions. . . . [B]ut for the racial discrimination employed by agents of the Defendant, Plaintiff would not have suffered aforesaid damages.") Gaytan's August 10, 2011 charge alleges that Hansen discriminated against him on the basis of his Hispanic ancestry by suspending him on August 1, 2011, allegedly because he fell asleep during his shift on March 17, 2010. The most obvious reading of Gaytan's complaint is that it is referring to the same allegedly adverse

9

employment action that was referenced in his August 10 charge. Gaytan's claim of unlawful discipline is reasonably related to his August 10, 2011 EEOC charge.

The City argues that Gaytan's claim that Wilson discriminated against him on the basis of race is beyond the scope of his underlying EEOC charge because the charge alleges discrimination based on Mexican ancestry, not race. Although the City does not press the issue, its argument is also applicable to Gaytan's claims of race discrimination involving O'Connor, Stroden, and Hansen, as all of Gaytan's EEOC charges allege discrimination based on ancestry rather than race.

As a threshold matter, the court notes that Title VII does not explicitly prohibit discrimination based on "ancestry," which is the word used in Gaytan's EEOC charge. The statute instead refers to discrimination based on "national origin." *See* 42 U.S.C. § 2000e-2(a). The EEOC has defined "national origin" discrimination broadly, to include discrimination "because of an individual's, or *his or her ancestor's, place of origin*; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1 (emphasis added). In addition, the statute's legislative history indicates that the terms "national origin" and "ancestry" are to be considered synonymous. *See Espinoza* v. *Farah Mfg. Co.*, 414 U.S. 86, 89, 94 S. Ct. 334, 38 L. Ed. 2d 287 (1973). Therefore Gaytan's EEOC charges can be construed as alleging national origin discrimination under Title VII.

Properly framed, the issue is whether Gaytan's allegations of national origin discrimination would have put the City and the EEOC on notice of race discrimination claims. "In the federal courts, there is uncertainty about what constitutes race versus national origin discrimination under Title VII." *Salas* v. *Wisc. Dep't of Corr.*, 493 F.3d 913, 923 (7th Cir.

2007); *see also Von Zuckerstein* v. *Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993) (noting that, in the context of a section 1981 claim, "[c]ertainly, the line between national origin and race or ethnicity . . . claims cannot be bright"). Courts in this district have reached different conclusions as to whether a claim of race discrimination is beyond the scope of an EEOC charge alleging only national origin discrimination. *Compare Oranika* v. *City of Chicago*, No. 04 C 8113, 2005 WL 2663562, at *3-4 (N.D. Ill. Oct. 17, 2005) (race discrimination claim was reasonably related to EEOC charge alleging discrimination on the basis that plaintiff was Nigerian), *with Padron* v. *Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1048-49 (N.D. Ill. 2011) (race discrimination claim not reasonably related to charge alleging discrimination based on plaintiffs' national origin, which was Cuban). The varying conclusions appear to depend, in part, on the extent to which the plaintiff's country of origin is populated primarily by members of a particular race. Plaintiffs who had alleged that they faced discrimination because of their Cuban origin could not later bring a claim for race discrimination, whereas a plaintiff alleging discrimination because he was from Nigeria could. *See Padron*, 783 F. Supp. 2d at 1048 ("'Cuban' refers to a specific country of origin, not an ethnicity. Moreover, it is not clear that 'Cuban' is used in practice to refer to a racial category . . . ."); *Oranika*, 2005 WL 2663562, at *4 ("The people of Nigeria appear to be overwhelmingly black . . . . Thus, an allegation of discrimination on the basis of being Nigerian strongly implies discrimination on the basis of color and race, as well."). Courts have also focused on whether the plaintiff might have put the EEOC on notice of a race discrimination claim because his charge used a term that might connote both race and national origin, such as the term "Hispanic." *See Torres* v. *City of Chicago*, No. 99 C 6622, 2000 WL 549588, at *2 (N.D. Ill. May 1, 2000) (race discrimination

claim was related to EEOC charge alleging discrimination based on plaintiff's Hispanic ancestry because the term "Hispanic" encompasses the concepts of race and national origin) (citing *Alonzo* v. *Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998)).

Ultimately, this court is guided by the well-established principle that because EEOC charges are usually drafted by laypersons, not lawyers, the proper focus is on a charge's factual statements rather than the specific theory of discrimination alleged by the plaintiff. *See Babrocky* v. *Jewel Food Co.*, 773 F.2d 857, 866 (7th Cir. 1985); *Jenkins* v. *Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 169 (7th Cir. 1976) (en banc); *see also Deravin* v. *Kerik*, 335 F.3d 195, 201 (2nd Cir. 2003) (although assertion of a national origin claim before the EEOC does not automatically alert the EEOC to a race discrimination claim, courts have recognized that the two types of claims may substantially overlap or even be indistinguishable depending on the facts of the case). As discussed *supra*, Gaytan's EEOC charges would have alerted the EEOC and the City to the fact that Gaytan was complaining about verbal harassment by three specific employees and discriminatory suspension and discipline by another employee. Two of Gaytan's EEOC charges allege discrimination based on his Hispanic ancestry. Given that the term "Hispanic" does not connote a specific country of origin, Gaytan's reference to his Hispanic ancestry would reasonably have alerted the EEOC to his race discrimination claim. *See Torres*, 2000 WL 549588, at *2. Gaytan's other two charges, dated April 15 and April 26, 2010, allege harassment based more specifically on Mexican ancestry. Nevertheless, given that even federal courts are hard-pressed to distinguish between claims of race and national origin discrimination, *see Abdullahi* v. *Prada U.S.A. Corp.*, 520 F.3d 710, 712 (7th Cir. 2008) (district court should not have dismissed section 1981 complaint for failure to allege race discrimination, where complaint

alleged that plaintiff was Iranian and had been discriminated against on the basis of national origin), an investigation into the conduct identified in Gaytan's EEOC charges would likely have encompassed claims for both race and national origin discrimination. Gaytan's claims will not be dismissed on the grounds that he failed to alert the EEOC to a race discrimination claim in his charges.

The City also argues that Gaytan cannot bring claims based on the allegations in the April 15, 2010 and August 27, 2010 charges because those charges are not like or reasonably related to the April 26, 2010 charge attached to Gaytan's complaint. The City has cited no case supporting its position that when a Title VII plaintiff files multiple EEOC charges, the allegations in the various charges must be like or reasonably related to each other. Title VII's exhaustion requirement is concerned only with the claims asserted in a plaintiff's complaint. *See, e.g.*, *Cheek*, 31 F.3d at 500 ("As a general rule, a Title VII plaintiff cannot bring claims *in a lawsuit* that were not included in her EEOC charge. . . . [A]llowing *a complaint* to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's . . . role, as well as deprive the charged party of notice of the charge." (emphasis added)). As discussed *supra*, the allegations in Gaytan's complaint implicate the same conduct and the same individuals as the allegations in his four EEOC charges. This supports the conclusion that the EEOC and the City would have had notice of the nature of Gaytan's dispute, and therefore, Gaytan should be permitted to pursue his claims in federal court. *See id.* at 501. For all of these reasons, Gaytan's discrimination claims will not be dismissed in their entirety on the ground that they are beyond the scope of his EEOC charges.

II.     **Whether Claims Arising from the April 15, 2010 and August 27, 2010 Charges are Time-Barred**

The City also argues that to the extent Gaytan seeks to bring claims based on the April 15, 2010 and August 27, 2010 EEOC charges, those claims are time-barred because he did not attach the charges or the corresponding right-to-sue letters to his complaint. The City does not dispute, however, that the EEOC issued its right-to-sue letters on September 6, 2011, or that Gaytan filed his complaint on December 5, 2011. Therefore, Gaytan's complaint was filed within Title VII's ninety-day statute of limitations period. *See* 42 U.S.C. § 2000e-5(f)(1). The cases cited by the City discuss Title VII's statute of limitations generally, but do not support its position that a timely Title VII complaint must be dismissed because the plaintiff failed to attach a charge or right-to-sue letter to his complaint. *See Portillo* v. *Zebra Techs. Corp.*, 154 F. App'x 505, 507 (7th Cir. 2005) (*pro se* plaintiff required to file suit within the statute of limitations period); *Threadgill* v. *Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (stating that the statute of limitations period begins to run either when the claimant or his attorney receives the letter); *MacGregor* v. *DePaul Univ.*, No. 10 C 107, 2010 WL 4167965, at *3 (N.D. Ill. Oct. 3, 2010) (dismissing claims where plaintiff filed complaint ninety-one days after receiving her right-to-sue letters). Gaytan's claims arising from the April 15, 2010 and August 27, 2010 EEOC charges will not be dismissed as time-barred.

III. **Whether Gaytan's Claim Relating to Discriminatory Discipline in March 2010 and Suspension in August 2011 Must be Dismissed because Gaytan Did Not Receive a Right-to-Sue Letter after Filing the Underlying Charge**

The City asserts that, to the best of its knowledge, Gaytan did not receive a right-to-sue letter after he filed his last EEOC charge dated August 10, 2011. This is the only charge filed by Gaytan that alleges discriminatory discipline on March 17, 2010 and August 1, 2011.

Although a right-to-sue letter is not a jurisdictional prerequisite to bringing a Title VII suit, the plaintiff's lack of a right-to-sue letter may constitute a defense to a Title VII claim. *Worth* v. *Tyer*, 276 F.3d 249, 259 (7th Cir. 2001). When a defendant moves to dismiss the complaint prior to the plaintiff's receipt of a right-to-sue letter, the complaint may be subject to dismissal. *Id.* (citing *Perkins* v. *Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991)). Gaytan does not assert that he has received a right-to-sue letter from the EEOC regarding his August 10, 2011 charge. Nor does he assert any grounds that might justify equitable modification of the statutory requirement of a right-to-sue letter. *Cf.* *Sherman* v. *Standard Rate Data Serv., Inc.*, 709 F. Supp. 1433, 1437 (N.D. Ill. 1989) (Rovner, J.). Accordingly, Gaytan's claim relating to his March 2010 discipline and August 2011 suspension will be dismissed.

IV. **Whether Gaytan's Claims against the DWM Must Be Dismissed**

Finally, the City argues that Gaytan's claims against the DWM must be dismissed because the DWM is a City department not subject to suit as an entity separate from the City of Chicago. The City is correct. *See, e.g.*, *Castillo* v. *Cook Cnty. Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993); *Averhart* v. *City of Chicago*, 114 F. App'x 246, 247 (7th Cir. 2004); *Yachnin* v. *Vill of Libertyville*, 803 F. Supp. 2d 844, 847 (N.D. Ill. 2011). Gaytan's claims against the DWM will be dismissed.

## CONCLUSION AND ORDER

The City's motion to dismiss [#14] is granted in part and denied in part. Gaytan's claim against the DWM is dismissed. Gaytan's claim of religious discrimination is dismissed. Gaytan will not be permitted to bring a claim based on his March 17, 2010 discipline or August 1, 2011 suspension. Gaytan will only be permitted to proceed with race discrimination claims relating to O'Conner's alleged harassment between March 17 and April 1, 2010, Wilson's alleged harassment on April 20, 2010, and the May 24, 2010 incident involving Stroden. The City is directed to answer the complaint as it relates to these claims by July 19, 2012. This case is set for a status hearing and scheduling conference on August 23, 2012. If Gaytan fails to appear at the next hearing, his case will be dismissed with prejudice for want of prosecution.

DATED: July 5, 2012          ENTER: _Joan N. Lefkow_
                       JOAN HUMPHREY LEFKOW
                       United States District Judge